IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XFIRE INC, | No. C 06-6475 SI |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| IGN ENTERTAINMENT INC., | |
| Defendant. | |

On October 16, 2006, plaintiff Xfire Inc. filed an application for a temporary restraining order. Plaintiff seeks an emergency order blocking the sale of a software gaming product, "Comrade," which is scheduled to be shipped on October 17, 2006, and in stores on October 18, 2006. Defendant opposes the application, and has filed declarations in support of its opposition. The Court has reviewed the parties' papers, and as detailed below, the Court finds that while there may be serious questions raised as to the merits of plaintiffs' claims, the balance of hardships does not tip sharply in plaintiff's favor. Accordingly, the Court DENIES plaintiff's application.

**BACKGROUND**

Plaintiff Xfire is a Delaware corporation with its principal place of business in Menlo Park, California. Compl. ¶ 4. According to the complaint, Xfire is the largest host of online gaming events on the Internet, and Xfire and its advertisers sponsor online events where members can play with professional "gamers," join in online chats with celebrities, and participate in contests involving their favorite games. *Id.* ¶ 6. Plaintiff distributes "Xfire TM," a software tool that allows users to keep track of when and where other gamers are playing games online. *Id.* ¶ 7. Xfire TM "provides valuable

services to gamers that enrich their online game playing experiences including friend tracking, a one click option to join friends' games, a server browser, in game messaging, peer to peer file downloading, automated player profiles, and voice chat." *Id.*

Defendant IGN Entertainment, Inc., is a competitor of Xfire. *Id.* ¶ 10. IGN recently launched a gaming product called "Comrade" which directly competes with Xfire by allowing online game users to create a buddy list of their fellow online gamers and see where those gamers are playing online. *Id.* ¶ 10. The focus of plaintiff's lawsuit, and of the instant application, is Comrade's "buddy sync tool" that extracts a user's buddy list information from Xfire and copies portions of it into the Comrade system. *Id.*[1] Plaintiff contends that when Comrade's buddy sync tool copies an Xfire user's buddy list, defendant is violating plaintiff's copyright, misappropriating plaintiff's trade secrets, and violating the Electronic Communications Privacy Act, 18 U.S.C. § 2201 *et seq.*[2]

Comrade is scheduled to ship on October 17, 2006, and will be available in stores on October 18, 2006. Briggs Decl. ¶ 4. Comrade will be bundled for sale with a new computer game, "Battleship 2142," which is manufactured by non-party Electronic Arts, Inc. *Id.* ¶ 3. According to Electronic Arts' Senior Product Manager, it is not possible to delete or otherwise disable Comrade from the hundreds of thousands of physical copies of Battleship 2142 that are ready to be shipped to customers or stocked in stores. *Id.* ¶ 4.

**LEGAL STANDARD**

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("The standard for issuing a preliminary injunction is the same as the standard for issuing a temporary restraining order."). A plaintiff can demonstrate it is entitled to such preliminary

---

[1] The parties dispute precisely how Comrade users obtain the buddy list information from Xfire; plaintiff alleges, *inter alia*, that Comrade copies private information from Xfire's website, while defendant asserts that Comrade only accesses information that is publicly available on Xfire's website.

[2] Plaintiff's complaint alleges additional claims, such as intentional interference with contract and negligent interference with economic relationship. This order only addresses the copyright, trade secret misappropriation, and Electronic Communications Privacy Act claims discussed in plaintiff's application for a temporary restraining order.

1  relief in either of two ways. Under the "traditional criteria," a plaintiff must show: "(1) a strong
2  likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary
3  relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public
4  interest (in certain cases)." *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006).
5  Alternatively, a plaintiff may establish "*either* a combination of probable success on the merits and the
6  possibility of irreparable harm *or* that serious questions are raised and the balance of hardships tips
7  sharply in his favor." *Id.* (emphasis in original). These two formulations of the alternate test "represent
8  two points on a sliding scale in which the required degree of irreparable harm increases as the
9  probability of success decreases." *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150,
10 1155 (9th Cir. 2006).

## DISCUSSION

### I. Likelihood of success on the merits

Based upon the record before the Court, the Court finds that plaintiff has not demonstrated probable success on the merits, but has raised serious questions as to the merits of at least some of its claims. With regard to misappropriation of trade secrets, plaintiff needs to show that defendant misappropriated information that "[d]erives independent economic value, actual or potential, from not being generally known to the public . . . [and] [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

Here, the parties have submitted conflicting evidence regarding whether an Xfire user's "buddy list" is publicly available, and they dispute the precise mechanism by which Comrade's buddy sync tool obtains the Xfire buddy list information. *Compare* Cassidy Decl ¶ 14 ("IGN's claim that the Xfire user friend information is in a public domain is not true. This friend information is legally accessible only by the utilization of a username unique to Xfire by users adhering to the terms and conditions of Xfire website."), *with* Wright Decl. ¶ 4 ("Xfire publishes usernames and the usernames of associated friends on a publicly accessible and easily located area of its website."). The Court finds there are serious questions as to whether, *inter alia*, the buddy lists are "generally known the public" by virtue of being accessible on Xfire's website, as well as whether plaintiff has taken steps to maintain secrecy of those

3

lists.[3]

With respect to plaintiff's copyright claims, it does not appear that plaintiff owns a registered copyright, and it is unclear whether plaintiff had submitted a copyright application at the time this lawsuit was filed. Although plaintiff's application for a temporary restraining order asserts that "Xfire possessed a copyright in its Xfire TM software," the declaration of Xfire CEO Michael Cassidy actually states, "Xfire is in the process of filing a copyright application for Xfire TM . . . ." Cassidy Decl. ¶ 11.[4] Thus, it is unclear from the record whether plaintiff has standing to assert any copyright claims, casting significant doubt on the merits of those claims. *See* 17 U.S.C. § 411(a) ("[N]o action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.").[5]

## II.     Balance of hardships

In light of the Court's conclusion that plaintiff has demonstrated serious questions going to the merits of its claims, plaintiff must show that the balance of hardships tips sharply in its favor.[6] *See Earth Island Inst.*, 442 F.3d at 1158. Xfire's CEO Cassidy states that hundreds of thousands of users are expected to purchase Battleship 2142, and after those users install the game, they will be asked if they want to install Comrade as part of a bundle of free software. Cassidy Decl. ¶ 9. According to Cassidy, "[i]f this occurs, many of these hundreds of thousands of consumers will install Comrade and

---

[3] The parties do not devote much attention to plaintiff's claim under the Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.* However, the question of whether the buddy lists are publicly available is also relevant to this claim, as the Act provides an exemption for "access [to] an electronic communication . . . that is readily accessible to the public."  18 U.S.C. § 2511(2)(g)(i).

[4] In addition, an independent search of the United States Copyright Office's website, www.copyright.gov/records/, did not locate any copyrights issued to plaintiff for Xfire or Xfire TM.

[5] There is a split of authority as to whether a party may bring a claim for copyright infringement when the party has applied for registration but before the Register of Copyrights has acted on the application. *See generally Loree Rodkin Management Corp. v. Ross-Simons, Inc.*, 315 F. Supp. 2d 1053, 1055 (C.D. Cal. 2004) (discussing authorities). The Court need not resolve this issue because it is unclear if plaintiff has even submitted an application to the Copyright Office.

[6] Accordingly, the case law plaintiff cites, for the proposition that a presumption of irreparable harm flows from a showing of likelihood of success on the merits, is inapposite. *See, e.g.*, *Cadence Design Syst. v. Avant! Corp.*, 125 F.3d 824, 827 (9th Cir. 1997).

4

its offending buddy sync tool on to their computers and . . . Comrade will rapidly accelerate its own growth and *potentially* dramatically reduce Xfire usage by illegally leveraging Xfire buddy relationships." *Id.* (emphasis added). In contrast, defendant has submitted the declaration of David Wright, an employee of defendant and the chief architect of Comrade. Wright states that "[s]imply because a user signs up to use Comrade's Buddy Sync does not mean that the user will abandon Xfire. In fact, a user can be a member of both Comrade and Xfire, and many Xfire users currently also use IGN's current GameSpy Arcade application (which has many similar features to Xfire's tool) and vice versa." Wright Decl. ¶ 9.

The Court finds that plaintiff has shown that it *might* lose customers as a result of the Comrade product. In contrast, aside from the obvious significant impact to defendant if the Court were to enjoin sales of Comrade, defendant has also demonstrated that an injunction would have far-reaching consequences to third parties such as Electronic Arts, Inc., the manufacturer of Battlefield 2142. Richard Briggs, Senior Product Manager for Electronic Arts, states that his company has been heavily promoting the October 17, 2006 ship date of Battlefield 2142, and has spent more than a million dollars marketing the game. Briggs Decl. ¶ 6. Briggs states that Electronic Arts and some game retailers are counting on Battlefield 2142 to be their biggest personal computer game release of the year, and that the October 17, 2006 release date was carefully chosen as the date most likely to maximize sales in light of the upcoming holiday shopping season, as well as to avoid mid-November release dates of other gaming products. *Id.* ¶¶ 6, 9. Briggs estimates that if the release date for Battlefield 2142 is delayed, the sales figures for the game could be reduced by at least half. *Id.* ¶ 10.

An injunction would also affect a number of companies that have entered into co-marketing deals with Electronic Arts, as well as retailers and consumers. Briggs states that Electronic Arts has entered into co-marketing deals with several business partners, such as Logitech and Dell, to promote the release of the game. *Id.* ¶ 7. According to Briggs, these partners have spent several millions of dollars to market the game and to develop products such as a special keyboard and keyboard template, and a high-end mouse, which are customized to enhance play of Battlefield 2142, *id..*; these products are scheduled to go on sale at the same time as Battlefield 2142. *Id.* ¶¶ 7, 12. In addition, Briggs states that retailers have been heavily advertising the October 18, 2006 release date, and have been reserving

shelf space to put Battlefield 2142 in stores on that date. *Id.* ¶ 12. Finally, Briggs states that there is significant public anticipation for the release of the game, and that as of October 10, 2006, consumers had pre-ordered roughly 33,000 units. *Id.* ¶ 11.

The Court is persuaded that the balance of hardships does not tip sharply in favor of plaintiff, and that to the contrary, an injunction would likely cause significant disruption and harm to numerous third parties who have no connection to the instant dispute. As such, an injunction would not further the public interest. *See Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003). In light of the foregoing, the Court finds that a temporary restraining order would be inappropriate in this case, and the Court DENIES plaintiff's application for an emergency order enjoining the sale of Comrade.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES plaintiff's application for a temporary restraining order.

**IT IS SO ORDERED.**

Dated: October ____, 2006                              s/Maxine Chesney
                                                       SUSAN ILLSTON
                                                       United States District Judge